UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:23-cv-118-GCM

| ELIJAH E. PACHECO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| FNU WHITLEY, et al., | ) | **ORDER** |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of the pro se Amended Complaint [Doc. 13]. The Plaintiff is proceeding in forma pauperis. [Doc. 6].

## I. BACKGROUND

The pro se incarcerated Plaintiff, filed the instant action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred while he was a pretrial detainee at the Wilkes County Jail (WCJ).[1] Before the Complaint had been reviewed for frivolity, the Plaintiff attempted to amend in a piecemeal fashion. [Doc. 8]. The Court denied the piecemeal amendment and granted Plaintiff the opportunity to amend. [Doc. 12]. The superseding Amended Complaint is now before the Court for initial review. [Doc. 13].

The Plaintiff names as Defendants the following WCJ employees: FNU Whitley, a major; Shelby Wyatt, a captain; Roger Hamby, FNU McGrady, and FNU Hill, corporals; FNU Hues and FNU York, sergeants; and FNU White, FNU Shumate, FNU Patrick, FNU Grant, FNU

---

[1] Plaintiff's present address of record is at the North Carolina Central Jail in Raleigh.

Norwood, FNU Ponder, FNU Plowman, FNU Tilley, and FNU Hicks, officers.[2] The Plaintiff asserts claims under the Eighth and Fourteenth Amendments for "cruel & unusual punishment," "pretrial punishment," "failure to protect from assault," "excessive use of force," and "loss of property." [Doc. 13 at 3-5]. He describes his injuries as follows:

> As a result of the cruel & unusual punishments I sustained hemmorhoids.
>
> As a result of the excessive use of force I sustained right shoulder tear.
>
> As a result of the failure to protect, I sustained a left should tear, and head wounds.
>
> The only treatment I received for these injuries was a penetrating lubrication ointment for the hemmorhoids.
>
> I was given x-rays for my shoulder, but was denied an MRI.

[Doc. 13 at 5] (errors uncorrected); [see also Doc. 13-1]. The Plaintiff seeks compensatory and punitive damages. [Doc. 13 at 5; Doc. 13-1 at 3-5, 7-9, 11].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

---

[2] The Plaintiff specifies that he is suing Defendants Whitley and Wyatt in their individual and official capacities, and that he is suing Defendants Hamby and McGrady only in their individual capacities. [See Doc. 13 at 2-3]. He does not specify whether he is suing the remaining Defendants in their individual capacities, their official capacities, or both.

In its frivolity review, this Court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166 (2023).

### A. Parties

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure. [See, e.g., Doc. 13-1 at 3, 7-9, 11 (referring to Phillips, Prevette, Wilson, Absher, Anderson, Thomas, Cockerham)]; Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity."). The Court also notes that many of the Plaintiff's

allegations use pronouns or vague terms such that the Court cannot determine the individual(s) to whom the Plaintiff refers. [See, e.g., Doc. 13-1 at 4 (referring to "several other officers")]; Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). The allegations directed at individuals not named as Defendants, or which are not clearly attributed to any Defendant, are dismissed without prejudice.

### B. Official Capacity Claims

The Plaintiff asserts claims against Defendants Whitley and Wyatt in their official capacities. [Doc. 13 at 2].

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21 (quoting Monell, 436 U.S. at 691). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694).

4

The Plaintiff does not appear to allege that Defendants Whitley or Wyatt violated his constitutional rights pursuant to a municipal custom or policy. The Plaintiff's only claim addressing detention center policy appears to be his allegation that Defendant McGrady violated his rights by confiscating envelopes in which Plaintiff's legal mail was received refusing Plaintiff to retain them pursuant to "Jail's policy." [Doc. 13-1 at 10]. Assuming *arguendo* that such claim would pass initial review, it would be unable to do so because the Plaintiff has sued Defendant McGrady only in his individual capacity. [Doc. 13 at 3]. Therefore, to the extent that the Plaintiff has attempted to assert Monell claims, they have failed initial review.

### C. Pretrial Punishment

The Plaintiff appears to claim that Major Whitley and Captain Wyatt failed to "procure" him in court for a first appearance and probable cause hearing in his criminal case, but that he was nevertheless detained "in an act of pretrial punishment." [Doc. 13 at 5; Doc. 13-1 at 2].

The Plaintiff has not articulated any facts to plausibly show that Defendant Whitley or Wyatt deprived him of a proceeding in his criminal cases, decided to keep detaining him as punishment, or that they any authority whatsoever over his criminal case including his court hearings and detention decisions. See generally Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02. Moreover, to the extent that the Plaintiff is attempting to challenge the validity of his detention, a § 1983 action is not the appropriate means to do so. See generally Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (when a state prisoner seeks immediate release or a speedier release from imprisonment, his sole federal remedy is a writ of habeas corpus). The Plaintiff's claim for "Pretrial Punishment" is, therefore, dismissed.

### D. Loss of Property

Plaintiff claims that Defendant Tilley neglected to properly inventory some of his property

5

at intake. [Doc. 13-1 at 3].

Plaintiff has failed to state a due process claim based on the deprivation of his personal property because he has an adequate post-deprivation remedy in state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (stating that intentional deprivations of property do not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) ("Under North Carolina law, an action for conversion will lie against a public official who by an unauthorized act wrongfully deprives an owner of his property."). The Court, therefore, will dismiss Plaintiff's claims addressing the alleged mishandling and loss of his property.

### E. Conditions of Confinement

The Plaintiff describes several incidents in which he was allegedly removed from his cell, forcibly placed in a restraint chair without a disciplinary hearing, then was held in a padded cell for several hours and up to a day before being returned to his usual cell. He alleges that this occurred: in late December 2022 or early January 2023 after the Plaintiff beat on a door at mealtime, refused to submit to officers, then punched his cell door open with his fists [Doc. 13-1 at 4]; on May 30, 2023 when he repeatedly pressed the emergency intercom, requesting to speak to a female officer whose voice he found to be calming, despite officer instructions to use the intercom only for emergencies [id. at 5]; on July 11, 2023, when he repeatedly requested a copy of an incident report from officers and "via intercom" [id. at 8]; on July 28, 2023, when he repeatedly refused a meal tray, shoved the tray at an officer with his foot causing the officer to spill it, struggled over a door's movement with the officer, and refused to submit to officers [id. at 9]; and on September 1, 2023, when he snatched half of an envelope from an officer's hand, refused to return it, and refused to submit to officers [id. at 10-11]. For the September 1 incident,

he additionally alleges that Officers Shumate and White, and Corporal Hamby forcibly placed him in the restraint chair in a contorted position, that they used extremely tight restraints that cut off his circulation, and that he was refused water for two hours while he was restrained. [Id. at 11]. He claims that these incident caused him pain and suffering, mental and emotional damages, and contributed to him having hemorrhoids for which he will likely require surgery and/or physical and mental therapy. [See id. at 4, 11].

An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment." Tate v. Parks, 791 F. App'x 387, 390 (4th Cir. 2019) (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)). "To prevail on such a claim, a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." Id. (citing Williamson, 912 F.3d at 178).

Construing the allegations liberally and drawing all inferences in Plaintiff's favor, the claims addressing the September 1 incident will be allowed to pass initial review against Defendants Shumate, White, and Hamby in that it is not clearly frivolous. However, with regards to the remaining incidents, the Plaintiff has not plausibly alleged that any Defendant acted with express intent to punish him, nor has he plausibly alleged that these actions were not reasonably related to a legitimate non punitive objective in light of his admittedly disruptive, oppositional, and/or aggressive behavior in each incident. See generally Pugh v. Evans, No. 5:11-CT-3239-D, 2012 WL 6892816, at *3 (E.D.N.C. June 20, 2012), *aff'd* 475 F. App'x 934 (4th Cir. 2012) (finding that a pre-trial detainee being held in the restraint chair for two hours, after he used the

prison's intercom system inappropriately, was not "an unreasonable period of time," and noting that courts have held that the "use of devices such as restraint chairs ... have repeatedly been found to be constitutional when used appropriately"). The Plaintiff's claim about the conditions of his confinement on September 1, 2023, therefore, will be allowed to proceed against Defendants Shumate, White, and Hamby, and the remaining claims are dismissed without prejudice.

**F. Excessive Force**

The Plaintiff appears to claim that Defendants Grant, Hamby, Shumate, and White also used excessive force against him during the September 1 incident. He claims that these Defendants forcefully seized him; "aggressively" forced him into a restraint chair while "contorting [his] neck, shoulders and arms" and "forcing, pushing, twisting and even pouncing on [him]…;" applied excessively tight restraints to him; and stated "try picking up 300 pounds bitch!'" [13-1 at 10-11]. The Plaintiff alleges that, when he was released around two hours later, he noticed a "blistering scar" on his right bicep and shoulder joint, which he showed to Officers White, Shumate, Grant, and Patrick, who provided no care.[3] [Id. at 11]. The "contortion" caused him "a great deal of pain and discomfort and resulted in the spraining/tearing of [Plaintiff's] right shoulder joint/ muscle and spraining of [his] neck." [Id.].[4]

---

[3] It does not appear that the Plaintiff is asserting a claim for deliberate indifference to a serious medical need. Had he done so, it would be dismissed because he has failed to plausibly allege that the marks on his shoulder and arm constituted a serious medical need, that the Defendants were aware of the same, and that they deliberately disregarded his need for medical care. See generally Farmer v. Brennan, 511 U.S. 825, 837 (1994); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them).

[4] The Plaintiff has attached to his Amended Compliant two "Excessive Force – Witness Statements" by Casey Prevette and Dalton Roberts. [Doc. 13-1 at 12].

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

Construing the allegations liberally and drawing all reasonable inferences in favor of the Plaintiff, the excessive force claim against Defendants Shumate, White and Hamby will be allowed to pass initial review in that it is not clearly frivolous.

**G. Failure to Protect**

The Plaintiff claims that he reported that he was in potential danger from his cellmate in August 2022, and that he was immediately placed in protective custody. [Doc. 13-1 at 6]. He remained in segregation for his protection for almost a year, until June 28, 2023 when, during Defendant Hues' shift, Plaintiff was brought back to the pod where Plaintiff's ex-cellmate was still being housed. On July 9, 2023, the Plaintiff's ex-cellmate and another inmate punched, kicked, and stomped the Plaintiff and tackled him to the ground, causing a severe tear/sprain of his left "shoulder cuff." [Id.]. Plaintiff claims that Defendants Hues, White, and "the other officers" failed to protect him from this assault. [Id.].

A pretrial detainee's failure to protect claim constitutes a due process claim under the Fourteenth Amendment. Farmer v. Brennan, 511 U.S. 825 (1994); Brown v. Harris, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying Farmer to a pretrial detainee's failure to protect and

9

medical claims). The deliberate indifference standard applies to cases alleging failure to safeguard an inmate's health and safety, including failure to protect inmates from attack. See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (internal quotation and citation omitted)). Courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference..." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021). To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted); Danser v. Stansberry, 772 F.3d 340, 346-47 (4th Cir. 2014) (objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury").

To be deliberately indifferent, a prison official must "know of and disregard an objectively serious … risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). "An officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer 'knows of and disregards' the risk." Parrish, 372 F.3d at 302 (quoting Farmer, 511 U.S. at 837). To be liable under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Thus, deliberate indifference requires a showing that a defendant "actually knew of and disregarded a substantial risk of serious injury to the detainee…." Young, 238 F.3d at 575-76. "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Here, the Plaintiff has failed to plausibly allege that any Defendant was aware that the Plaintiff's former cellmate still presented a substantial risk of serious injury to him based on a report made nearly a year earlier, and deliberately failed to prevent the same. Nor does Plaintiff suggest that placing him in the same pod as his former cellmate was anything more than negligent. See Grayson, 195 F.3d at 695. Accordingly, the Plaintiff's failure to protect claims are dismissed.

IV. **CONCLUSION**

In sum, the Amended Complaint has passed initial review against Defendants Hamby, Shumate, and White for the conditions of his confinement and for the use of excessive force on September 1, 2023. The remaining claims are dismissed without prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint [Doc. 13] passes initial review on the Plaintiff's § 1983 claims regarding the conditions of his confinement and the use of excessive force against Defendants Hamby, Shumate, and White as described in this Order.

2. The Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is respectfully instructed to mail three blank summons forms to the Plaintiff, which the Plaintiff shall fill out and return for service of process on Defendants Hamby, Shumate, and White. Once the Court receives the completed summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon Defendants.

**IT IS SO ORDERED**.

Signed: January 16, 2024

Graham C. Mullen
United States District Judge